IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:19-CR-00088-DJH |
| | ) | |
| DEVAN EDWARDS | ) | |

**SENTENCING MEMORANDUM**

*ELECTRONICALLY FILED*

The United States of America, by counsel, files its memorandum in support of sentencing in this action currently scheduled for March 5, 2020. The United States does not plan to put on any witnesses at the hearing.

The United States agrees with the Guidelines calculation from the PSR. The offense level is 17. As Defendant has a Criminal History Level of I, this results in a Zone D sentencing range of 24 to 30 months. Considering this sentencing range and the sentencing factors under Title 18, United States Code, Section 3553(a), as well as other factors that will be raised at the sentencing, it is the position of the United States that a sentence at the low end of the ultimate Guideline range is appropriate.

**I. BACKGROUND AND OFFENSE CONDUCT**

The Defendant, a former corrections officer at Louisville Metro Department Corrections (LMDC), was convicted of one count of violating rights under color of law. The Defendant began working as a corrections officer at LMDC in September 2017. He went through a training program and then began working during a probationary period.

On April 15, 2018, the Defendant was working with fellow corrections officer David Schwartz, under the supervision of Sergeant Donna Gentry. They were conducting security checks in a single-cell dormitory when they noticed T.W. had placed toilet paper over the window

1

to his cell. T.W. was a "SORT" inmate, which meant that under LMDC rules, only members of the SORT team were permitted to enter his cell. The Defendant, Schwartz, and Gentry were not SORT team members. Schwartz ordered T.W. to remove the toilet paper. T.W. stated he was using the toilet and refused to remove the paper. Gentry ordered a cell entry to resolve the situation, in violation of standing orders prohibiting non-SORT personnel from interacting with SORT inmates, a rule Gentry previously had been disciplined for violating. None of the officers turned on body cameras, in violation of LMDC policy, so the cell entry was not captured on video.

According to T.W., Schwartz punched T.W. in the face as soon as the cell door opened. Gentry deployed OC spray in the cell, which hit both T.W. and Schwartz. The Defendant helped restrain T.W., but T.W. does not allege the Defendant struck him while they were in the dorm cell. Once he was restrained, the officers removed T.W. from the cell due to the deployment of the OC spray. The Defendant escorted T.W. to the West Hold, a holding cell without surveillance cameras, and Schwartz followed close behind. Gentry did not accompany them to the West Hold.

As T.W. entered the West Hold, Schwartz punched T.W. in the face, shoved him to the rear of the cell, and grabbed him. T.W. slumped against the bench and began coughing out blood and OC spray. T.W. asked why they were doing this. The Defendant and Schwartz punched T.W. several times in the head. According to the Defendant, he struck T.W. after T.W. spit on him. The Defendant acknowledges T.W. may have been spitting out OC spray and blood, rather than intentionally spitting on the Defendant. During the attack, the Defendant inadvertently turned on his body camera. The Defendant then said, "[T.W.], what are you doing man? Why you gonna spit on us?" T.W. responded that he was just trying to "take a shit" and that he was not trying to give them any trouble. Schwartz, not realizing that the Defendant had turned on his body camera, punched T.W. in the face while T.W. was handcuffed, sitting down, and cowering from the officers. The Defendant told T.W., "All you had to do was take the strings down, dude."

2

Another officer then intervened to stop the assault and obtain medical attention for T.W. The same officer later reported the incident to a supervisor.

After the incident was over, the Defendant informed Gentry that he had punched T.W. in the West Hold, and that he was concerned that he may have broken his hand. The Defendant also advised that he had accidentally turned on his body camera and recorded part of the incident. Gentry instructed the Defendant to go to the hospital to have his hands checked out. When the Defendant returned from the hospital, Gentry informed him that she had written a report documenting the incident with T. W. The report written by Gentry omitted any mention of the use of force in the West Hold. Gentry instructed the Defendant to review the report and to copy from it, but to change the wording so it would not be obvious that he had copied from it. Following Gentry's lead, the Defendant wrote a false report documenting the incident.

## II.  GUIDELINES CALCULATION

The United States concurs with the Guidelines calculation in the PSR, which sets forth a total offense level of 17.

## III.  CRIMINAL HISTORY

The United States concurs with the accuracy of the Criminal History Category calculation of the United States Probation Office. Defendant has no criminal history points and is a Criminal History Category I.

## IV.  18 U.S.C. § 3553(a) FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1) the nature and circumstances of the offense and the history and characteristics

>           of the defendant;
>
> (2)   the need for the sentence imposed;
>
>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct;
>>
>> (C)   to protect the public from further crimes of the defendant; and
>>
>> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   the kinds of sentences available;
>
> (4)   the kinds of sentence and the sentencing range established for--
>
>> (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
>>
>> . . .
>
> (5)   any pertinent policy statement--
>
>> . . .
>
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)   the need to provide restitution to any victims of the offense.

The Defendant stands convicted of violating an inmate's rights while acting as a corrections officer. He also wrote a false report to cover up his conduct. The sentence imposed in this action should adequately account for the seriousness of the offense, reflect other sentencing factors, and provide a just punishment no greater than necessary. Based on these factors, as outlined below, the United States recommends a sentence at the low end of the ultimate Guideline range.

A sentence of imprisonment within the ultimate Guideline range is necessary to reflect the serious abuse of trust that is at root of the offense. Corrections officers are placed in a position of public trust -- they are given expansive authority over inmates who are confined, unarmed, and frequently restrained. In this case, the Defendant punched the victim while he was completely vulnerable. He also wrote a false report to cover up his own misconduct and that of his coworkers. We have laws that protect inmates who are being confined within our justice

system, but they are meaningless without sentences to back them up.

At the same time, a sentence at the low end of the ultimate Guideline range reflects the personal characteristics and circumstances of the Defendant with respect to the incident. Shortly before the incident, in February 2018, the Defendant had been on leave to deal with anxiety and depression related to working at LMDC. At the time of the incident, the Defendant was 21 years old and still in his probationary period at LMDC. He had no prior experience in law enforcement or corrections. During the incident, the Defendant was following the lead of Gentry, his supervisor, and Schwartz, a former Marine, both of whom were significantly older than the Defendant.

## V. CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court apply the Sentencing Guidelines, as outlined above, and other factors that will be raised at the sentencing hearing, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a sentence at the low end of the ultimate Guideline range.

Respectfully submitted,

| | |
|---|---|
| RUSSELL M. COLEMAN | ERIC S. DREIBAND |
| United States Attorney | Assistant Attorney General |
| Western District of Kentucky | Civil Rights Division |
| | |
| */s/ Amanda E. Gregory* | |
| By: Amanda Gregory | Mary Hahn |
| Assistant United States Attorney | Trial Attorney |
| 717 West Broadway | 601 D Street, NW |
| Louisville, KY 40202 | Washington, DC 20004 |
| Tel. (502) 582-5016 | Tel. (202) 353-5939 |
| Fax: (502) 582-5067 | christopher.perras@usdoj.gov |
| amanda.gregory@usdoj.gov | |

## CERTIFICATE OF SERVICE

  I hereby certify that on February 21, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

             s/ *Amanda E. Gregory*
            Amanda E. Gregory
            Assistant U.S. Attorney