```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF KENTUCKY
 2                         LOUISVILLE DIVISION


 3
      UNITED STATES OF AMERICA,      )    Case No. 3:19-CR-00088
 4                                   )
              Plaintiff,             )
 5                                   )
      v.                             )
 6                                   )
      DEVAN L. EDWARDS               )
 7                                   )    March 5, 2020
              Defendant.             )    Louisville, Kentucky
 8

 9                             *  *  *  *  *
                         TRANSCRIPT OF SENTENCING
10                    BEFORE HONORABLE DAVID J. HALE
                    UNITED STATES SENIOR DISTRICT JUDGE
11                             *  *  *  *  *

12    APPEARANCES:

13    For United States:       Amanda E. Gregory
                               U.S. Attorney's Office
14                             717 West Broadway
                               Louisville, KY 40202
15
      For Defendant:           Brian Butler
16                             Dathorne & Butler, LLC
                               600 W. Main Street
17                             Suite 500
                               Louisville, KY 40202
18
      [Defendant present.]
19


20
                          Rebecca S. Boyd, RMR, CRR
21                          Official Court Reporter
                            232 U.S. Courthouse
22                          Louisville, KY 40202
                               (502) 625-3777
23
      Proceedings recorded by mechanical stenography, transcript
24    produced by computer.

25
```

1          (Begin proceedings in open court 10:13 a.m.)

2               DEPUTY CLERK:  3:19-CR-88, United States of America

3     vs. Devan Edwards.

4               MS. GREGORY:  Amanda Gregory for the United States.

5               MR. BUTLER:  Brian Butler, Your Honor, for Mr.

6     Edwards.

7               THE COURT:  We are here for a sentencing hearing, and,

8     Mr. Butler, have you and Mr. Edwards received and reviewed the

9     Presentence Investigation Report?

10              MR. BUTLER:  We have, Your Honor.

11              THE COURT:  Mr. Edwards, have you had enough time to

12    go over the PSR with Mr. Butler?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  Are there any remaining objections to the

15    calculations contained in the report or the other contents of

16    the report?

17              MS. GREGORY:  Nothing for the United States.

18              MR. BUTLER:  No, Your Honor.

19              THE COURT:  Let's, then, begin by talking about the

20    guideline calculations in the report.  They begin on page 6.

21    And as we look at the guideline calculations, I will adopt

22    the -- I will state for the record that I will adopt the

23    Presentence Investigation Report without objection.  I will also

24    remind counsel that the guidelines are, of course, nonbinding on

25    the Court.

1          Now, the base offense level here is a 12.  This is based

2    upon guideline 2H1.1, which addresses the defendant's violation

3    of Title 18 of the US Code, Section 242.  Given that we have

4    involvement of two or more participants, that leads to the base

5    offense level of 12.

6          There is a six-level enhancement here given that the offense

7    was committed under the color of law, the defendant being a

8    corrections officer.  Given also that the victim of the crime

9    was physically restrained, there is a two-level enhancement

10   under guideline 3A1.3.

11         There were three defendants prosecuted here; is that

12   correct, Miss Gregory?

13             MS. GREGORY:  Yes, Your Honor.

14             THE COURT:  And the determination has been made

15   without objection that the defendant was a minor participant in

16   comparison with at least one of the other defendants, and, thus,

17   a two-level decrease was applied pursuant to guideline 3B1.2.

18         There is a guideline enhancement of two levels for

19   obstruction of justice.  The finding having been made that the

20   defendant impeded or attempted to impede the administration of

21   justice here under guideline 3C1.1.

22         That results in an adjusted offense level of a 20, and then

23   after application of the acceptance of responsibility credits

24   results in a total offense level of 17.  And, for the record,

25   Miss Gregory, I presume that the Government does not object to

1    the application of that third level?

2          MS. GREGORY:  That is correct, Your Honor.  We make

3    that motion.

4          THE COURT:  Any questions or late objections to that

5    guideline calculation?

6          MR. BUTLER:  No, sir.

7          MS. GREGORY:  No, Your Honor.

8          THE COURT:  And do we have any motions to take up?

9          MS. GREGORY:  Yes, Your Honor.  May we approach?

10         THE COURT:  Yes.

11         (Sealed excerpt.)

12         THE COURT:  Miss Gregory, Mr. Butler, before we move

13   to discussing the issues that Congress has set out in Title 18

14   of the US Code at Section 3553(a), let me state for the record

15   that I have reviewed very carefully the parties' sentencing

16   memoranda and all of the materials, Mr. Butler, that you have

17   submitted, including the letters written in support of your

18   client, I have reviewed those very carefully as well.

19       Now, as I said, now would be an opportunity for each side to

20   address the factors that come into consideration at Section

21   3553(a).

22         MR. BUTLER:  Yes, sir.  Judge, as we stated in our

23   sentencing memorandum, we would respectfully ask the Court to

24   probate Mr. Edwards.  If the Court believes home detention is

25   appropriate, then he's certainly ready, willing, and able to

1    accept whatever sentence the Court gives.

2        I would start with the nature and the circumstance of the

3    offense, and I know you're aware of it from the Presentence

4    Investigation Report, but I think some things bear pointing out.

5        Number one:  Mr. Edwards was, as you know, a probationary

6    officer.  I think that's an important point to start with.  I

7    would also note that Mr. Edwards had been brought back on duty

8    within, I think, two months or less of actually being put in The

9    Brook to deal with some significant mental health issues, which,

10   fortunately, he is doing very well with now, but probably was

11   not the best command decision to put him on the floor after

12   having suffered that kind of incident, but I think it does

13   mitigate the offense.

14       I think when we look at the offense, we start with his

15   sergeant, who he has to report to and has to rely on, ordered

16   himself and Officer Schwartz into a cell against protocol.

17   There is methods to deal with prisoners that refused commands.

18   This one did.  The way that that's done is to maximize officer

19   safety, most importantly, and inmate safety, probably

20   secondarily.  In this case, in direct violation of the protocol,

21   she ordered them in.  It resulted in a scuffle.  It then

22   resulted in Officer Schwartz clearly using excessive force.

23       It also resulted in Sergeant Gentry emptying a pepper can

24   spray into the inmate's face, which, from my review, I do not

25   believe was justified.  There may have been an argument.  That

1    it was given that there was some level of scuffle, but it was

2    clearly outside of protocol.

3        Devan, I don't think there's any allegation, did anything

4    inappropriate other than entering the cell when -- against

5    protocol based upon the order of his sergeant.  I think that's

6    important to consider, because, in that context, I believe two

7    of the three people used or arguably used excessive force

8    against that person.

9        They then transport the prisoner to another section of the

10   jail.  At that point, Officer Schwartz assaults the prisoner

11   further, chokes the prisoner.  When that's completed, after the

12   pepper spray and the choking and all of that that's happened to

13   this inmate, he spits out, and he spits on Devan.  He was

14   restrained.  He should not have struck him.  He did, and he

15   struck him twice.

16       He did it in a reaction.  He did it because he believed he

17   had been spit upon.  There was blood and other things in there.

18   And, most importantly, I think this really is important, and the

19   reason I'm talking about this, even though it's in the

20   presentence report, is the nature of the offense.  What happens

21   after that is very telling, because he is clearly extremely

22   upset.  Not angry.  He's upset at this inmate.  "Why did you do

23   that to me?  I've always been good to you."  He clearly reacted

24   to what he thought was an assault.

25       Now, he shouldn't have done it.  His training said not to do

1    it, and that's why he pled guilty to it.  But it's markedly

2    different, in my mind, to react inappropriately and commit an

3    assault that way than it is to have a sadistic bent to you where

4    you take some sort of pleasure in mistreating people that are in

5    a compromised or restrained position, which is very clearly what

6    Officer Schwartz did.  I would also note that unlike, certainly,

7    Officer Schwartz, he had never had a use-of-force incident prior

8    to this.  This was a onetime event.

9         So I think that's why 3553 is important, because the math is

10   the math with the guidelines.  Did you commit an assault under

11   the color of law?  Yes.  You get a 12-level -- you start with a

12   base offense level, you get a six-level bump, just like the

13   Court calculated.

14        But it doesn't necessarily take into account motives, past

15   behaviors and things like that, so I think that's very

16   important, I think given those guidelines, but his particular

17   circumstances in it is mitigating.

18        His personal history and characteristics I think strongly

19   advocate for leniency in this case.  I would start with some of

20   the things that we talked about in our presentence report, but

21   I'd like to expound upon them a little bit.

22        Here is someone that has always gainfully worked.  He

23   currently has a wonderful job that he has obtained at Gordon

24   Food Service in Shepherdsville, Kentucky.  He's making between

25   21 and $22 an hour.  Has health insurance, a 401(k), and he's

1   using that job to support himself but, more importantly, his

2   four-year-old son.

3       I think that's important, the personal history and

4   characteristics, because I think you can look at Devan Edwards,

5   Your Honor, and first see, obviously, there's no prior criminal

6   history, but what is his likely future conduct and contributions

7   to society?  What does that work history tell us?  And I think

8   it tells us that you will very unlikely ever hear from Devan

9   Edwards again.

10      I think he will work.  He will contribute to society.  His

11  history shows that.  I think his commitment to his family, as

12  you've read these letters, also demonstrate that he is someone

13  that's not only loved and relied upon, but he is someone that

14  has a reason to follow your orders and continue to contribute to

15  society.

16      Clearly, he has, as we've discussed, done everything he

17  could since this offense to make it right.  He pled guilty when

18  he was told to plead guilty.  He has honored every request.

19  He's done everything asked of him.

20      Maybe more importantly than I'll ever be able to put in a

21  sentencing memorandum, I know you get these letters all the

22  time, and, you know, some of them are good, some of them are

23  wrote, and -- but you don't get many like the two that were sent

24  by his mother and his grandmother.  At least I don't see many

25  like this.

1      He was a young boy, when he was three -- he didn't tell me

2   any of this.  I didn't know until I read it, but he was a young

3   boy when he was three that had to call -- because his dad left

4   him and his brother alone with a woman who ODed, and he had to

5   call 911 and tell them, "There's a dead lady here."  He's a

6   young man that, in his teenage years, found his mother ODed and

7   had to call and save her life.

8      These are unbelievably tragic things.  He's a young man,

9   like many, but whose father ran out on him when he was young.

10  He was the shining star of the family, and most people that come

11  out of this type of environment are career criminals.  I mean,

12  we all see it, and that doesn't excuse what they do, and I

13  certainly don't believe that you don't have freewill or you

14  don't have choices that you can make in life, but we all know

15  that certain backgrounds and situations presuppose someone to

16  violate the law.

17     And in Devan's situation, he wanted to be a police officer,

18  and that's what he -- that was his lifelong dream, to try to

19  make the world a little bit better place so maybe there were

20  less Devan Edwards growing up in Louisville or somewhere else,

21  and I think that says a lot about who he is, and that's

22  something that a math grid and the guidelines just really can't

23  take into account.  And I think that's why the Congress put 3553

24  in place, but I think that's very -- very mitigating, and I know

25  criminal history is taken into account in the guidelines as well

1    as 3553, and, as I said, he has none.

2        You know, specific deterrence is another factor that you

3    have to consider, and in here, that's over.  There is -- he is

4    never going to work in corrections or in law enforcement again.

5    This felony will haunt him for the rest of his life.  It's been

6    public.  It's been humiliating.  He is specifically deterred.  I

7    can tell you he's genuinely remorseful.  I believe the

8    Government would say the same.

9        As far as general deterrence, I think if a sentence of

10   probation with or without home detention, whatever you think is

11   appropriate, serves the goals of general deterrence.

12       In any context other than a law enforcement setting,

13   striking someone like he did would probably result in a

14   misdemeanor offense in Jefferson District Court.  I understand

15   he's different, and the law is different, because he's in law

16   enforcement, but anyone in corrections knowing that even a

17   reaction, an inappropriate reaction to something could result in

18   being in front of you with a lifetime felony, with a loss of a

19   career, with the possibility of prison, I think this serves

20   general deterrence.

21       Particularly in light of his particular circumstances, as we

22   discussed at the bench, in everything that he has done to try to

23   make this situation better, he still stands before you in this

24   situation.  I think a sentence of probation with or without home

25   detention certainly serves that.

1      Finally, I know the Court has to consider how this sentence

2  fits in the scheme of the individual case.  In this case, as the

3  Court knows, Officer Schwartz was sentenced to 24 months.  I

4  think everyone agrees that he is, by far, the worst culprit

5  here.  His conduct was outrageous.  It was -- he had many

6  use-of-force instances against him.  It seemed to me very clear

7  that, you know, he enjoyed taking his position of power and

8  abusing people.  That's not Devan.

9      Sergeant Gentry, who was his supervisor, who violated

10 protocol by sending them into that cell, who I would argue

11 violated protocol in an unlawful use of force by emptying that

12 pepper spray can into the inmate's face and then directed

13 Officer Edwards and Officer Schwartz to create untrue

14 use-of-force instances -- reports to cover up this instance is

15 very culpable in this, and she received probation with eight

16 months of curfew.

17     I think when we factor looking at everyone's roles in it,

18 he's a probationary officer coming back from a mental health

19 issue.  She is his supervisor.  It would seem to me it would be

20 unjust for him to be sentenced to a harsher sentence than that,

21 and I would argue he deserves a more lenient sentence, but I

22 certainly don't believe he justifies a harsher sentence than

23 her.

24     So for all those reasons, we would respectfully ask the

25 Court to sentence him to probation.  If you believe home

1   detention is important as a component of this sentence, that,

2   obviously, whatever you decide is your decision, but we don't

3   oppose that.  Thank you, Judge.

4           THE COURT:  Miss Gregory, before you begin your

5   response, let me ask if you have any witnesses or statements

6   from the victim here that you would like to present to the

7   Court.

8           MS. GREGORY:  No, Your Honor.  We did consult with the

9   victim.  He decided not to make a victim impact statement, and

10  we don't have any witnesses.

11      I first want to just point out, since the majority of

12  defense's argument was addressing the punches that the defendant

13  delivered against -- or on TW.  The defendant was charged with

14  and pled with violating TW's rights, and there are sort of two

15  ways he did that within the charge, and one is the twice

16  punching TW in the face while TW was seated handcuffed and not

17  resisting, but also in failing to intervene to protect TW from

18  being assaulted by another correctional officer, despite having

19  the opportunity to do so.  So those are both charged, and those

20  were both what was part of the plea.

21      The United States' ultimate recommendation is a sentence of

22  10 months.  If the Court adopts United States' other

23  recommendation, and the sentence falls in zone C, that the

24  United States would defer to the Court on whether to do the zone

25  C split sentencing options that are available.

1   A lot of what the defendant -- or defense counsel has said

2 regarding the defendant, and the nature and circumstances of the

3 defense -- of the offense, and the personal history and

4 characteristics of the defendant are other things that the

5 United States agrees on, and we will highlight some of those

6 points and add where I can.

7   The defendant was very young at the time of this offense.

8 He was still in his probationary period.  He, while still being

9 in his probationary period, had missed work for a while to be on

10 a medical health leave related to stress and mental health

11 issues that arose because of the stress of his job.

12   So he arguably should not have been on the floor at that

13 time, and he was in a very tense situation where he was

14 following the lead of two people who were significantly older

15 than him.  One of whom was his actual supervisor.

16   There were two parts of the -- or the offense took place

17 over the course of about an hour or so, and it took place in two

18 different locations, and it started in the single-cell dormitory

19 where the victim was housed with a number of other inmates, and

20 there, there was -- there were several different uses of force.

21   Some of them were somewhat questionable, but no one has been

22 charged for any uses of force that happened in the single-cell

23 dormitory.  At the same time, what the defense says is true.  No

24 one has said that anything that the defendant did in the

25 single-cell dormitory was inappropriate.

1    However, when they went to the west hold, another way that

2    protocol was violated was that usually, after there had been a

3    use-of-force incident in the single-cell dormitory, the officers

4    who were involved in that incident should not be the ones then

5    escorting the inmate somewhere else or dealing with the inmate

6    after that due to tempers being high, possibility of situations

7    arising, and that protocol wasn't followed here, and that likely

8    contributed to what happened in the west hold where the victim

9    was assaulted by defendant Schwartz, and where defendant Edwards

10   joined in, at one point.

11   His -- the circumstances surrounding his mental health, his

12   youth, his role, all those, we think, are mitigating

13   circumstances.  They are, however, we think, reflected in the

14   minor-role adjustment that we -- that wasn't actually included

15   in the initial PSR, and that the United States made an objection

16   based on, and that was adopted by probation and now by the

17   Court.

18   We agree that this is probably not a case where specific

19   deterrence is needed to show the defendant's felony conviction.

20   He won't be able to work in law enforcement again, and he

21   probably won't be in the same sort of stressful situation again.

22   We do think that it's likely the defendant could benefit from

23   some mental health counseling to dealing with stressful

24   situations, but we are not specifically concerned about making

25   sure the defendant doesn't commit further crimes.

1     The primary concern of the United States is that the

2     sentence here reflect the seriousness of the offense, promote

3     just punishment, and provide for general deterrence for others

4     who are in a similar role as the defendant.

5         Corrections is a very hard environment.  It's a very

6     stressful environment where there are going to be lots of times

7     where legitimate uses of force are going to be necessary.  There

8     are going to be lots of situations where inmates are not going

9     to be easy to deal with or inmates might get violent themselves

10    or they're going to get mouthy, and when those situations arise,

11    corrections officers do have an advantage, because the inmates

12    are in a vulnerable position.  They are restrained.  Corrections

13    officers have weapons, and when disputes arise between them,

14    people are more likely to believe the corrections officers.

15        Here, the defendant's use of force was not a legitimate use

16    of force, and while -- and another mitigating factor, Your

17    Honor, is the fact that the defendant did actually tell his

18    supervisor about his use of force.  He did tell Sergeant Gentry

19    that he had punched the victim in the single cell.

20        But after telling her that, he then went along with the plan

21    of omitting any mention of what happened in west hold from the

22    official reports, and he did not tell anyone else about it.  So

23    he both used force on a handcuffed and restrained inmate and

24    then created a false report to cover up his own misconduct and

25    the misconduct of another officer.

1    This type of behavior, it's very hard to ferret out.  As the

2  three defendants in this case did, if people band together and

3  get their story straight, it's unlikely that others will believe

4  three -- or will believe an inmate over three officers.  Here,

5  there was another officer who came forward and was the

6  whistleblower in this circumstance and reported what happened,

7  and if not for that, this might not ever have come to light.

8    And because a lot of these cases probably do get swept under

9  the rug, it's important that the people who do violate these

10  inmates' rights, and who do lie about it and try to cover it up

11  are punished.

12    There are a lot of mitigating circumstances, but we think

13  that those are reflected in the minor-role adjustment and in the

14  United States' other motion, and in the recommendation for a

15  low-end guideline sentence and for, you know, deferring to the

16  Court on a split sentence, but the United States' recommendation

17  is a 10-month sentence with the possibility of the zone C split

18  sentence.

19    THE COURT:  Anything further, Mr. Butler?

20    MR. BUTLER:  Your Honor, whenever it's appropriate,

21  Mr. Edwards would like to address you briefly, sir.

22    THE COURT:  That will be fine.

23    THE DEFENDANT:  Your Honor, I'd first like to say

24  thank you for letting me address the Courts.  I'll start by

25  saying I'm truly sorry for the events that took place that day.

1    I'm sincerely and truly sorry to Mr. Whitehead, his family, my

2    fellow officers, and the judicial system.

3       I want to let you know since that day, I've been filled with

4    remorse, agony, and sorrow.  I never clocked in with the

5    intentions of striking an inmate.  That was not why I got into

6    corrections.  I reacted based upon a poor interpretation of Mr.

7    Whitehead's actions.  I always got along well with Mr.

8    Whitehead.  I'm also sorry that I followed my boss' lead and

9    filed a report that was not accurate.  I knew better, but,

10   unfortunately, I gave in to peer pressure.

11      I have done everything I can to make this right.  I have a

12   good job, a young son that depends on me, and for his sake, I

13   ask you to show mercy in your sentence.  I'm sorry.  Thank you.

14            THE COURT:  Anything further, Mr. Butler?

15            MR. BUTLER:  No, Your Honor.

16            THE COURT:  Miss Gregory, anything in addition to what

17   you have already --

18            MS. GREGORY:  No, Your Honor.

19            THE COURT:  -- submitted to the Court?  I will, at

20   this point, observe that this is a difficult case for the

21   reasons that Mr. Butler and Miss Gregory both have outlined.  I

22   think anyone familiar with the facts here, certainly anyone

23   familiar with the information provided me about the defendant,

24   Mr. Edwards, in the Presentence Investigation Report would know

25   that the decision that I must make now as to an appropriate

1   sentence to impose is neither an easy nor obvious one.

2       There are many occasions, in cases that come before this

3   Court, where the sentence is, if not prescribed by statute,

4   strongly suggested by the guidelines and readily obvious to the

5   parties and the Court.  This is not one of those occasions.

6       And so I'm going to take a few minutes now and return to

7   chambers to consider the information that I have just received

8   from counsel as I finalize my decision on an appropriate

9   sentence here.

10          MR. BUTLER:  Yes, sir.

11      (Recess at 10:56 a.m. until 12:01 p.m.)

12          THE COURT:  We are back on the record in US v. Devan

13  Edwards, and it is not -- as I mentioned before the break, it is

14  not typical that I need to break during the sentencing hearing

15  in order to assess the arguments of counsel and finalize my

16  decision as to an appropriate sentence, but this is, also as I

17  said, an unusual case, and the circumstances here, with respect

18  to Mr. Edwards, also a bit unusual.

19      And so I have carefully considered what I have heard, what I

20  read previously, and I am prepared, Mr. Butler, Miss Gregory,

21  now to state my sentence, unless either side has anything

22  further they wish to bring to the Court's attention.

23          MR. BUTLER:  No, sir.

24          MS. GREGORY:  No, Your Honor.

25          THE COURT:  Having considered the advisory sentencing

guidelines, as I outlined at the beginning of this hearing, as well as the factors set forth in 18 USC Section 3553(a), I will impose the following sentence:

It is the judgment of the Court that the defendant is committed to the custody of the Bureau of Prisons for a term of 12 days as to Count 1 in the information.  This term of imprisonment shall be served via intermittent confinement while being subject to a period of supervised release for a term of two years as to Count 1 in the information.

As a special condition of the two-year term of supervised release, the defendant shall be confined in the custody of the Bureau of Prisons beginning 7:00 a.m. each Friday until 7:00 a.m. each Sunday for six consecutive weekends, commencing as directed by the US Probation office.  The defendant shall comply with the rules of the facility in which he is confined.

Upon completion of the term of intermittent confinement, the defendant shall be subject to location monitoring for a period of one year.  During this term, the defendant shall be subject to a curfew and shall be restricted to his residence with reasonable allowances for work, medical appointments, mental health counseling, religious services, education, and approved family-related obligations or any other activities which may be approved in the discretion given the US Probation office.

The defendant shall abide by the standard conditions of supervision adopted by the Court as well as a number of special

1    conditions, a copy of which has been provided to Mr. Edwards and

2    Mr. Butler.  These special conditions include drug testing as

3    requested by the US Probation office, mental health treatment,

4    and the defendant is prohibited from any contact with the victim

5    of his crime.  The US Probation office will answer any questions

6    Mr. Edwards has regarding the requirements of these conditions.

7         The defendant shall be required to pay a fine of $1,000,

8    which the Court now imposes.  He is also required to pay a

9    special penalty assessment of $100 as to the single count of

10   conviction.  These financial sanctions shall be paid in

11   accordance with a schedule of payments page, which will be

12   contained in the judgment.

13        Restitution is not an issue here, as the Government has

14   informed the Court, and I am going to waive the costs of

15   investigation, prosecution, incarceration, and supervision.

16        I have carefully considered the history and characteristics

17   of the defendant, including his mental health challenges, his

18   recent compliance with supervision, and his work history have

19   also been noted by the Court.

20        I have also considered the nature and circumstances of the

21   offenses here.  These crimes were more than a despicable assault

22   on one person, for which substantial punishment alone is

23   warranted, but these offenses and those of the co-defendants

24   were crimes against the community they were sworn to serve.

25        The importance of humane and just corrections department to

the orderly and fair administration of justice should be obvious to all of us, and these actions undermine public confidence in the fair and orderly administration of justice. The responsibility to avoid this type of problem in the future will rest with the Louisville Metro Department of Corrections officials, as the defendant will never again work in this role.

Now, as I outlined at the outset of this hearing, the advisory sentencing guidelines here produce a total offense level of 17 against a criminal history category of 1. After consideration of the Government's motion, and the arguments of counsel, as well as the other relevant factors set forth in 18 USC Section 3553(a), I conclude that this sentence properly reflects the seriousness of the defendant's offenses and will provide adequate deterrence to criminal conduct.

Along with the term of supervision, the public, I conclude, will be properly protected from further crimes of this defendant, and I also conclude that the sentence of ten days -- I'm sorry. Twelve days' confinement followed by one year of home confinement represents just punishment.

This sentence is sufficient but not greater than necessary to comply with the purposes set forth in 3553(a)(2). It also satisfies the applicable statutory provisions and conforms to the parties' plea agreement.

Miss Gregory, Mr. Butler, are there any objections to the sentence that I just announced or the special conditions which

1    have not previously been raised?

2              MS. GREGORY:  No, Your Honor.

3              MR. BUTLER:  No, sir.

4              THE COURT:  Now, let's talk about Mr. Edwards' appeal

5    rights.  Miss Gregory, if you would please confirm my memory

6    that the Court -- at the time the Court took Mr. Edwards' guilty

7    plea, the parties outlined the essential terms of their plea

8    agreement, and that included an appeal waiver, did it not?

9              MS. GREGORY:  Yes, Your Honor.

10             THE COURT:  So, Mr. Edwards, you may then recall that

11   at the time of your guilty plea hearing, we discussed your plea

12   agreement which contains an appeal waiver.  In other words, you

13   have agreed to give up your right to appeal your guilty plea or

14   the sentence that I have just imposed or your conviction unless

15   that appeal is based upon a claim of ineffective assistance of

16   counsel and/or prosecutorial misconduct.

17        Now, in order to appeal on either of those bases or if you

18   believe your appeal waiver is invalid for any reason, you may

19   appeal to the Court of Appeals, but to do so, you must file a

20   notice of appeal within 14 days of the entry of judgment.

21        If you need the assistance of the clerk's office in filing

22   that notice, you may request and expect to receive their

23   assistance.  If you cannot afford the fee associated with an

24   appeal, you may ask that that fee be waived, and if you cannot

25   afford counsel on appeal, you may ask that counsel be appointed

1    to represent you free of charge.  Do you understand these appeal

2    rights as I've outlined them to you?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Mr. Butler, anything further with respect

5    to your client's Rule 32 rights that we should cover?

6              MR. BUTLER:  No, sir.

7              THE COURT:  Any other issues left for the Court to

8    address at this time?

9              MS. GREGORY:  Nothing from the United States, Your

10   Honor.

11             MR. BUTLER:  Judge, just a practical.  Does he talk

12   with probation about where to --

13             THE COURT:  Yes.

14             MR. BUTLER:  What place to do this?

15             THE COURT:  Yes.  Thank you.

16             MR. BUTLER:  Yes, sir.

17             THE COURT:  We'll be adjourned.

18             MS. GREGORY:  Thank you, Your Honor.

19      (Proceedings concluded at 12:09 p.m.)

20                  C E R T I F I C A T E

21      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

22   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

23

24   _____s/Rebecca S. Boyd_____        3-30-2020_____
     Official Court Reporter                  Date

25